913 So.2d 143 (2005)
Justin MILLER, husband of/and Darla Miller, individually and on behalf of their minor children, Brayden Miller and Wyatt Miller
v.
ENTERGY SERVICES, INC., Entergy Corporation, Entergy New Orleans, Inc. and Entergy Louisiana, Inc.
No. 2004-CA-1370.
Court of Appeal of Louisiana, Fourth Circuit.
July 13, 2005.
*144 Michael D. Parks, McAlester, OK, and Brian D. Katz, Russ M. Herman, James C. *145 Klick, Herman, Herman, Katz & Cotlar, L.L.P., New Orleans, LA, for Plaintiff/Appellant.
Kenneth P. Carter, Margaret Jenkins Savoye, New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge DENNIS R. BAGNERIS SR., Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE).
TERRI F. LOVE, Judge.
This appeal arises from the trial court's judgment granting Motions for Summary Judgment in favor of defendants, Entergy Corporation and Entergy New Orleans, Inc.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
In November 1990, Entergy Services entered into a General Operations Agreement for Contracted Services with Tower Inspection, Inc. ("Tower Inspection") establishing a continuing relationship in which Tower Inspection would provide Louisiana Power & Light (Entergy Louisiana) and New Orleans Public Service (Entergy New Orleans) with maintenance work, pursuant to Contract Orders and Contract Change Orders.
In July 2002, Entergy Services, on behalf of Entergy Louisiana and Entergy New Orleans, executed Contract Order Number CHC0464-00, which designated Tower Inspection, the contractor, to perform specific maintenance/painting work in Harahan, Louisiana on the Harahan Crossing Tower ("Crossing Tower"), which Entergy Louisiana asserts it owns, operates and controls. A crew employed by National Steel Erectors Corporation ("National Steel"), a subcontractor to Tower Inspection, was working on the 431-foot electrical transmission tower when Justin Miller ("Mr. Miller"), a painter employed by National Steel, was injured from contact with an energized surge arrestor on the electrical transmission tower. Mr. Miller was injured in the course and scope of his employment with National Steel and in conjunction with the work performed as provided in the contract between Entergy Services and Tower Inspection.
Mr. Miller and his wife, Darla Miller, individually and on behalf of their two minor children (collectively referred to as "the Millers"), filed suit against Entergy Corporation, Entergy Louisiana, Entergy New Orleans, and Entergy Services, alleging that the Entergy defendants, as either owners of the Crossing Tower and/or as entities that transmit high voltage electricity, were negligent and/or at fault for the injuries and damages sustained because the Entergy defendants failed to properly protect Mr. Miller from electrical contact.
Entergy Corporation and Entergy New Orleans filed a Motion for Summary Judgment asserting that neither Entergy Corporation, nor Entergy New Orleans owns, maintains, or has custody of the Crossing Tower. Defendants, Entergy Services, Entergy Corporation, Entergy New Orleans and Entergy Louisiana, also filed a third party demand, naming American International Group and Royal Insurance Company of America as third party defendants, asserting that as such, the third party defendants are liable to the Entergy defendants for any amounts that they may be found liable for in the claims filed by the Millers.
The Millers filed a supplemental and amending petition for damages asserting that the Entergy defendants acted as a single business enterprise and alter egos of each other and as such, are liable for the acts of the other. On April 17, 2004, the trial court issued a written judgment granting defendants', Entergy Corporation and Entergy New Orleans, Motion for Summary Judgment and declaring the *146 judgment as final and appealable, pursuant to La. C.C.P. art. 1915. The Millers filed a Motion for New Trial asserting that the judgment appears clearly contrary to the law and evidence and that genuine issues of material fact exist. The trial court denied the Millers' Motion for New Trial and the Millers timely filed this appeal, asserting that the trial court erred in granting Entergy Corporation and Entergy New Orleans Summary Judgment.

Standard of Review
Our review of a grant or denial of a motion for summary judgment is de novo. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). Factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion and all doubt must be resolved in the opponent's favor. Willis v. Medd, 00-2507, p. 2 (La.12/18/00), 775 So.2d 1049, 1050. If the pleading, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law, a motion for summary judgment will be granted. La. C.C.P. art. 966(B).
In the case sub judice, this Court must conduct de novo review to determine whether the trial court committed error in granting summary judgment in favor of Entergy New Orleans and Entergy Corporation. In conducting our review, this Court must construe any factual inferences drawn from the evidence in favor of the Millers, who are opposing the motions for summary judgment. Further, this Court cannot make any determination on the merits of the Millers' claims, make any credibility determinations, or evaluate the weight of the evidence. See Independent Fire Insurance Co. v. Sunbeam, 99-2181, 99-2257 (La.02/29/00), 755 So.2d 226; Knowles v. McCright's Pharmacy, Inc., 34,559 (La.App. 2 Cir. 4/4/01), 785 So.2d 101. To determine whether the trial court erred in granting the motion for summary judgment in favor of Entergy Corporation and Entergy New Orleans, we must determine whether there are any genuine issues of material fact.

ENTERGY NEW ORLEANS
The Millers assert that the trial court erred in finding that Entergy New Orleans was not a proper party to the instant suit, granting their motion for summary judgment and dismissing the Millers' claims against them. The Millers aver that the contractual language of the agreement under which Mr. Miller was employed clearly demonstrates Entergy New Orleans was a proper party and therefore, the trial court was precluded from granting their motion for summary judgment, insofar as genuine issues of material fact existed.
Entergy Corporation, formerly known as Middle South Utilities, is an integrated energy company engaged primarily in electric power production, retail distribution operations, energy marketing and trading, and gas transportation. Entergy Corporation owns and operates power plants and delivers electricity to customers in Louisiana. The business of Entergy Corporation traditionally operates through its regulated utility subsidiaries in its respective state service territories.
Entergy Louisiana, a subsidiary of Entergy Corporation, is a regulated public utility that provides electric generation, transmission and distribution service in the state of Louisiana. Entergy New Orleans, also a subsidiary of Entergy Corporation, is a regulated public utility that provides electric generation transmission and distribution service exclusively within the Parish of Orleans. Entergy Services is a service company pursuant to the Public *147 Utility Holding Company Act of 1935 (PUHCA), 15 U.S.C. § 79 et seq. that acts as an agent for the Entergy operating companies.
Entergy Corporation entered into a System Agreement with Louisiana Power & Light, which is presently known as Entergy Louisiana; New Orleans Public Service, which is presently known as Entergy New Orleans; and Middle South Services, which is presently known as Entergy Services, declaring that the aforementioned were to be considered Entergy System Operating Companies and reiterated that Entergy Services shall act as agent for one or more of the Entergy operating companies whenever appropriate, which included Entergy Louisiana and Entergy New Orleans.[1]
The record establishes that the contract entered into by Tower Inspection and Entergy Services, expressly provides that Entergy Services was "acting for itself and as agent for each other Entergy companies as defined in the General Operating Agreement for Contracted Services." The General Operating Agreement for Contracted Services was a contract perfected between Louisiana Power & Light, Entergy Louisiana's successor; and New Orleans Public Service, Entergy New Orleans' successor.
Based upon our review of the contract between the parties and the corporate depositions, we conclude that there are genuine issues of material fact as to whether Entergy New Orleans is liable for the action of Entergy Louisiana based upon Entergy Corporation's attempt to create a principal  mandatary relationship within its contract. This Court is bound by the evidence in the record; accordingly, we find the trial court erred in granting summary judgment as it relates to Entergy New Orleans.

ENTERGY CORPORATION
The Millers also aver that the trial court erred in granting Entergy Corporation's motion for summary judgment because genuine issue of material fact exists as to the liability of Entergy Corporation for acts of its subsidiaries through the single business enterprise theory. In their supplemental and amending petition for damages, the Millers assert that defendants, Entergy Corporation, Entergy Services, Entergy Louisiana, and Entergy New Orleans are liable for the acts of the other because Entergy Corporation, Entergy Services, Entergy Louisiana and Entergy New Orleans acted as a single business enterprise and are alter egos of each other. We mirror our brethren of the First Circuit Court of Appeal in opining that:
The single business enterprise doctrine is an equitable doctrine applied to reflect partnership-type liability principles when corporations integrate their resources in operations to achieve a common business purpose. (citations omitted). Thus, when corporations represent precisely the same single interests, a court is free to disregard their separate corporate identity. Grayson v. R.B. Ammon and Associates, Inc., 99-2597, p. 17 (La.App. 1 Cir. 11/3/33), 778 So.2d 1, 14.
Commercial Union Insurance Company v. CBC Temporary Staffing Services, Inc. and GAN Insurance Company, 04-0854, p. 5 (La. 1 Cir. 11/3/04), 897 So.2d 647, 651.
In seeking summary judgment and asserting that the Millers were not entitled to recover under the single business entity *148 theory, Entergy Corporation averred that it was a publicly-traded utility holding company and that the Millers' attempt to impute liability pursuant to this theory of recovery was inappropriate considering the highly regulated environment in which Entergy Corporation and its subsidiaries operate. Entergy Corporation further averred that the Millers' contention that the Entergy defendants were liable under the single business entity theory was unnecessary, as Entergy Louisiana was an adequately capitalized and solvent company and acknowledged ownership of the Crossing Tower. Entergy Corporation and Entergy New Orleans attested that the Millers could not possibly satisfy their burden of proof at trial, establishing that the corporate structure of Entergy Corporation and its subsidiaries is inadequate or improper because the structure is a Public Utility Holding Company pursuant to the PUHCA, 15 U.S.C. § 79 et seq., it is regulated by Federal law and Federal law preempts state law on the matter.
Because Louisiana considers the concept of the corporation beneficial, the principal that the corporation is a separate entity should be disregarded only in a very limited manner. The party seeking to establish that two corporations were in fact a single business enterprise, such that liability imposed on one corporation would be imposed upon the other, must prove the existence of a single business enterprise by clear and convincing evidence. Grayson v. R.B. Amman & Associates, Inc., 99-2597, p. 16 (La.App. 1 Cir. 11/3/00), 778 So.2d 1, 14. As such, the Millers bear the burden, by clear and convincing evidence, to establish that special circumstances and/or factors exist, which establish a single enterprise among Entergy Corporation, Entergy Louisiana, Entergy New Orleans, and Entergy Services.
This Court In Re New Orleans Train Car Leakage Fire Litigation, 96-1677, pp. 2-3 (La.App. 4 Cir. 3/5/97), 690 So.2d 255, 256-257 addressed at length the single business entity theory. This Court opined:
Corporations are generally recognized as distinct legal entities, separate from the individuals who comprise them. Riggins v. Dixie Shoring Company, Inc., 590 So.2d 1164 (La.1991). The legal fiction of a distinct corporate entity may be disregarded when a corporation is so organized and controlled as to make it a mere instrumentality or adjunct of another corporation. If one corporation is wholly controlled by another, the fact that it is a separate entity does not relieve the latter from liability. In that situation, the former corporation is considered to be the alter ego or business conduit of the latter. Courts can pierce the veil of a corporation in order to reach the "alter egos" of the corporate defendant. Green v. Champion Insurance Company, 577 So.2d 249 (La.App. 1st Cir.1991), writ denied, 580 So.2d 668 (La.1991).
When two or more corporations operate a single business, the courts have been unwilling to allow affiliated corporations that are not directly involved to escape liability simply because of the business fragmentation. Green; Lucey Manufacturing Corporation v. Oil City Iron Works, 15 La.App. 12, 131 So. 57 (La.App. 2nd Cir.1930).
Where a single corporation has been fragmented into branches that are managed by a dominant or parent entity, or have interlocutory directorates, the courts have held the dominant or parent corporation is liable for the obligation of its branches whenever justice requires protection of the rights of third persons. Johnson v. Kinchen, 160 So.2d 296 (La.App. 1st Cir.1964). The single business enterprise theory has been employed to extend liability beyond a separate entity. Green, 577 So.2d at 258. In determining *149 whether a corporation and its subsidiaries can be classified as a single business entity, this Court, in Lee v. Clinical Research Center of Florida, 04-0428, pp. 5-6 (La.App. 4 Cir. 11/17/04), 889 So.2d 317, 322 citing Green v. Champion Insurance Company, 577 So.2d at 257-258, discussed the list of possible factors addressed by the First Circuit, which may be considered to either support or refute a party's argument regarding existence of a single business entity.[2] However, the list enumerated in Green, 577 So.2d at 257-258, and discussed by this Court in Lee, 889 So.2d at 322, was not intended to be an exhaustive list of factors the courts should consider in determining whether a corporation and its subsidiaries can be classified as a single business entity. Lee v. Clinical Research Center of Florida, 04-0428, p. 6 (La.App. 4 Cir. 11/17/04), 889 So.2d 317, 322.
Reiterating our discussion of the record regarding the trial court's granting of summary judgment in favor of Entergy New Orleans, the record establishes that the contract entered into by Tower Inspection and Entergy Services, expressly provides that Energy Services was "acting for itself and as agent for each other Entergy companies as defined in the General Operating Agreement for Contracted Services."
The Millers aver that the single business enterprise theory factors are applicable to the case sub judice. In addressing the factors as provided in Green and acknowledged by this Court in Lee, we are required to view the evidence in a light most favorable to the Millers. As evidenced by the record before us, the Millers' assertions that Entergy Corporation and Entergy New Orleans are corporations with identity or substantial identity of ownership, providing that all of the Entergy subsidiaries share the same logo and colors; that Entergy Louisiana, Entergy New Orleans, and Entergy Services have common directors or officers, as that of Entergy Corporation, the parent corporation; that all the Entergy defendants share common employees, co-mingle funds; engagement in business fragmentation by the Energy Corp.; undercapitalization; centralized accounting; common offices; and unified administrative control and other conduct, create genuine issues of material fact.
Although mere assertions are insufficient to establish genuine issue of material fact; assertions substantiated with factual support sufficient to establish that the evidentiary burden of proof is able to be satisfied at trial, raise genuine issues of material fact. This Court's decision is not a determination on the merits of the Millers' claims, nor does it involve any credibility determinations, or evaluations of *150 weight of the evidence. This Court's decision is based on the record before us, and we find that the Millers provide a factual basis upon which a finder of fact may make a determination that the Entergy Corporation and its wholly owned subsidiaries constitute a single business enterprise such that liability of one of its subsidiaries constitutes the liability on the part of the other subsidiaries and its parent corporation.
Based on the foregoing, we conclude that after reviewing the facts in a light more favorable to the Millers, the party opposing the motions for summary judgment, the Millers have successfully raised issues of material fact as to whether Entergy Corporation and its subsidiaries constitute a "single business enterprise." Accordingly, the trial court erred in granting summary judgment in favor of Entergy Corporation and Entergy New Orleans and we, therefore, reverse the trial court's judgment granting summary judgment and remand this case to the trial court for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] Entergy Corporation, the parent company of Entergy Louisiana, Entergy New Orleans and other utility suppliers, owns 100% of the common stock of these corporations.
[2] 1. corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control; 2. common directors or officers; 3. unified administrative control of corporations whose business functions are similar or supplementary; 4. directors and officers of one corporation act independently in the interest of that corporation; 5. corporation financing another corporation; 6. inadequate capitalization ("thin incorporation"); 7. corporation causing the incorporation of another affiliated corporation; 8. corporation paying the salaries and other expenses or losses of another corporation; 9. receiving no business other than that given to it by its affiliated corporations; 10. corporation using the property of another corporation as its own; 11. noncompliance with corporate formalities; 12. common employees; 13. services rendered by the employees of one corporation on behalf of another corporation; 14. common offices; 15. centralized accounting; 16. undocumented transfers of funds between corporations; 17. unclear allocation of profits and losses between corporations; and 18. excessive fragmentation of a single enterprise into separate corporations. Green, 577 So.2d at 257-258.